Jeff J. **TAYLOR**, Petitioner,

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1996.
Decided July 31, 1996.

---

**23.** *See* 43 P.S. §§ 41–71.

Frank Finch, III, for Petitioner.

Margaret D. Blough, Assistant Chief Counsel, for Respondent.

Mindy Friedman, for Intervenor, The Scully Company.

Before FLAHERTY and LEADBETTER, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Petitioner Jeff J. Taylor appeals a final order of the Pennsylvania Human Relations Commission (PHRC) which adopted a hearing examiner's recommendation that his complaint against the Scully Company (Respondent) for gender discrimination be dismissed. We affirm.

On August 21, 1988, Respondent, a real estate management corporation, advertised for a "real estate manager" in the Philadelphia Inquirer. Mr. Taylor submitted a resume in response to the ad and was called by James Scully, Jr., an owner of Respondent. As Mr. Scully testified, at the time he called he had no intention of hiring Mr. Taylor for the specific position because the advertised job was managing one or more high-rise apartment buildings, for which Mr. Taylor had no experience. (Notes of Testimony (N.T.) at 237–238; Reproduced Record (R.R.) at 246a–247a.) He did, however, want to talk with Mr. Taylor because of his extensive experience with smaller scale properties, which might be useful to Respondent in the future. (*Id.*) Mr. Taylor and Mr. Scully discussed Mr. Taylor's experience and qualifications, and Mr. Scully told Mr. Taylor that he would "get back to him." When Mr. Scully did not telephone him again, or return his calls, Mr. Taylor called and told Respondent's receptionist that his next contact would be through his lawyer. Mr. Scully took the call and told Mr. Taylor that he could hire whomever he wanted. Respondent subsequently hired a woman for the position, Bonnie Carson, who did have experience managing high-rise buildings.

After this conversation with Mr. Scully, on September 21, 1988, Mr. Taylor filed a complaint with the PHRC alleging that Respondent had discriminated against him because of his age when it refused to hire him.[1] (R.R. at 2a.) At a fact-finding conference, held as part of the PHRC's investigation of the age discrimination claim, Mr. Scully apparently stated to Mr. Taylor, "you would not have gotten the job anyway because my intent was to hire a woman." (N.T. at 62; R.R. at 71a.) Following the conference, Mr. Taylor filed an amended complaint charging Respondent with both age and gender discrimination. (R.R. at 5a.) Following its investigation, the PHRC found that probable cause had been established with respect to only the allegation of unlawful gender discrimination. A public hearing was held before a permanent hearing examiner who issued Findings of Fact, Conclusions of Law, an Opinion and a Recommendation to the PHRC that Mr. Taylor's complaint be dismissed. In so recommending, the hearing examiner concluded that Mr. Taylor had not met his burden of proving that Respondent had violated Section 5(a) of the Pennsylvania Human Relations Act (Act)[2], 43 P.S. § 955(a). On September 19, 1995, the PHRC issued a Final Order adopting the hearing examiner's decision and dismissing Mr. Taylor's complaint. Mr. Taylor filed a timely petition for review with this Court, and Respondent intervened.

▇▇▇ The scope of our review in a PHRC matter is limited to a determination of whether the adjudication is in accordance with the law, whether constitutional rights were violated, and whether the PHRC's findings of fact are supported by substantial evidence. *H.S.S. Vending Distributors v. Pennsylvania Human Relations Commission*, 162 Pa.Cmwlth. 602, 639 A.2d 953 (1994). In this case, Mr. Taylor claims that the PHRC erred as a matter of law in applying the incorrect legal analysis, placing the burden of proof on Mr. Taylor despite direct evidence of discriminatory intent, and that findings of fact regarding Mr. Taylor's qualifications for the real estate manager position were not supported by substantial evidence.

Under Section 5(a) of the Act:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ...:

(a) For any employer because of the ... sex ... of any individual or independent contractor to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual ... if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a). In cases arising under Section 5(a), the Pennsylvania courts apply the analysis established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for cases arising under Title VII of the Civil Rights Act of 1964.[3] Pursuant to this analysis, adopted by our Supreme Court in *General Electric Corporation v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), the plaintiff has the burden to state a *prima facie* case for discrimination by establishing the following elements:

1. that he is a member of a protected class;

2. that he applied for a position for which he was qualified;

3. that his application was rejected; and

4. that the employer continued to seek applicants of equal qualifications.

*General Electric; City of Pittsburgh v. Pennsylvania Human Relations Commission*, 157 Pa.Cmwlth. 564, 630 A.2d 919 (1993), *appeal dismissed*, 538 Pa. 318, 648 A.2d 326 (1994).

1. Mr. Taylor explained that his complaint arose from his final telephone conversation with Mr. Scully, and his suspicions as to why he was being rejected. He testified that he "couldn't fix it on race because he never saw me. The only thing I could come up with was the age factor because he asked me how old I was." (N.T. at 114; R.R. at 123a.)

2. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–962.2.

3. 42 U.S.C. §§ 2000e—2000e–17.

■ Once the plaintiff establishes a *prima facie* case, a presumption of discrimination is raised, which can be rebutted by the employer. To overcome the presumption, the employer must go forward with evidence of nondiscriminatory motive. *Consolidated Rail Corporation v. Pennsylvania Human Relations Commission,* 136 Pa.Cmwlth. 147, 582 A.2d 702 (1990). If the employer meets this burden, the plaintiff can ultimately prevail if he can show by a preponderance of the evidence that the employer's proffered reason is pretextual. *Consumers Motor Mart v. Pennsylvania Human Relations Commission,* 108 Pa.Cmwlth. 59, 529 A.2d 571 (1987). It is then up to the trier of fact to decide which party's explanation of the employer's motivation it believes. *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987).

In the case at bar, the hearing examiner determined that Mr. Taylor had set forth a *prima facie* case of gender discrimination, establishing the four elements of the *McDonnell Douglas* analysis; that the Respondent had articulated a legitimate, nondiscriminatory reason for not hiring Mr. Taylor; and that Mr. Taylor had not proved that the articulated reason was either pretextual or unworthy of credence. The hearing examiner concluded: "Complainant [Mr. Taylor] has not met his ultimate burden of persuasion by demonstrating, by a preponderance of the evidence, that Respondent's actions violated the Pennsylvania Human Relations Act." (Conclusion of Law No. 9.)

The hearing examiner found that the Respondent met its burden of producing evidence of a legitimate, nondiscriminatory reason for rejecting Mr. Taylor's application, based upon Mr. Scully's testimony that Mr. Taylor was not qualified to manage high-rise apartment buildings. He then went on to evaluate whether Mr. Taylor carried his burden, under *McDonnell Douglas,* to show that the proffered explanation was pretextual, or unworthy of credence. Mr. Taylor argues that the hearing examiner erred in applying the *McDonnell Douglas* analysis to place the ultimate burden of proof on him, in light of the direct evidence of discriminatory intent

established by Mr. Scully's comments at the fact-finding conference. In finding that Mr. Taylor had not met this burden, the hearing examiner concluded that Mr. Scully's comment at the fact-finding conference was an "off-hand remark" that "does not, by itself, give rise to liability for sex discrimination." (Opinion at 15–16.)

■ Mr. Taylor claims that the hearing examiner should have applied the analysis set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which is utilized in cases with direct evidence of discrimination or "mixed motives," i.e., a legitimate and an improper reason for a hiring decision. We agree, however, with the hearing examiner's finding that Mr. Scully's comment to Mr. Taylor that "you would not have gotten the job anyway because my intent was to hire a woman" was an "off-hand remark" which does not rise to the level of direct evidence of discrimination. Mr. Scully explained the comment, stating that it was meant to be "conciliatory to make him feel a little bit better" about not getting the job. The hearing examiner appropriately weighed this evidence and made a credibility determination that Mr. Scully's comments did not directly evidence discrimination. Accordingly, because the hearing examiner did not consider Mr. Scully's comments direct evidence of discrimination, he did not err in applying the *McDonnell Douglas* analysis. However, even if the hearing examiner had applied the *Price Waterhouse* analysis, the Respondent will still prevail.

■ Under *Price Waterhouse,* the plaintiff must first prove that his gender played a motivating part in an employment decision. Then, the burden of proof shifts to the employer as follows:

> [W]hen a plaintiff ... proves that [his] gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.

490 U.S. at 258, 109 S.Ct. at 1795. Mr. Taylor argues that under this standard he must prevail unless the Respondent demon-

strates that it was not motivated by discriminatory intent at the time of the decision to reject his application. We *do not agree.*

First of all, Mr. Taylor has not met his burden of proving that his gender played a motivating part in Respondent's decision not to hire him. The only evidence of discrimination offered by Mr. Taylor is Mr. Scully's comments regarding his intention to hire a woman, which the hearing examiner did not credit as evidencing discrimination. Moreover, Mr. Taylor testified that until the fact-finding conference, he had had no reason to believe that Respondent had discriminated against him because he was a male. (N.T. at 137; R.R. at 146a.) Accordingly, Mr. Taylor has not satisfied the first part of the *Price Waterhouse* analysis. Regardless, even if Mr. Taylor had demonstrated discriminatory motive, Respondent has met its burden of proving that it was not motivated by discriminatory intent at the time it decided not to hire Mr. Taylor.

Under *Price Waterhouse,* a showing that gender played a motivating part in an employment decision does not require a *per se* finding of liability on the part of an employer. As noted by the Supreme Court, an employer does retain some freedom of choice, the preservation of which "means that an employer shall not be liable if it can prove that, even if it had not taken gender into account, it would have come to the same decision regarding a particular person." 490 U.S. at 242, 109 S.Ct. at 1786. With regard to the standard of proof necessary, the Supreme Court in *Price Waterhouse* wrote as follows:

> [A]n employer may not meet its burden in such a case by merely showing that at the time of the decision it was motivated only in part by a legitimate reason. . . . The employer instead must show that its legitimate reason, standing alone, would have induced it to make the same decision.

490 U.S. at 252, 109 S.Ct. at 1791–92.

The hearing examiner found that Mr. Scully never intended to hire Mr. Taylor, despite the fact that he called him after receiving his resume, because Mr. Taylor did not have the experience necessary for the advertised position as a real estate manager. Specifically,

the hearing examiner made the following findings of fact:

8. Respondent Owner James Scully telephoned the Complainant in or about the first week of September 1988 and discussed the Complainant's experience and qualifications.

9. The position advertised was that of Regional Property Manager for a group of high-rise, 1000 + − unit buildings, including Parktowne Place Apartments.

10. Respondent Owner James Scully had no intention of hiring the Complainant for the position of Regional Property Manager because the Complainant's experience was primarily in managing small-scale, multi-family buildings.

11. When James Scully initially contacted the Complainant, it was for the purpose of discerning whether a position commensurate with his qualifications would be available in the future.

(Opinion at 7) (citations omitted). These findings, which are based upon substantial evidence, demonstrate that Respondent would not have hired Mr. Taylor, because he lacked the experience required for the job, regardless of whether or not it preferred a woman in the position. Mr. Taylor, simply, was not qualified for the job. Mr. Scully had made this determination before calling him, based upon his resume, without comparing him to any other applicant, male or female. At the time Mr. Scully made the decision that he would not hire Mr. Taylor for the advertised position, the decision was based upon Mr. Taylor's lack of appropriate experience.

Accordingly, because Mr. Taylor has not proved that his gender played a part in Respondent's decision not to hire him, and because even if he had, the Respondent proved that its legitimate reason for rejecting Mr. Taylor—his lack of experience for the particular position—induced it to make the same decision regardless of his gender, Mr. Taylor would not have prevailed even if the hearing examiner had applied the *Price Waterhouse* analysis.

Mr. Taylor also argues that the hearing examiner's findings regarding the compara-

tive qualifications of him and Ms. Carson, the woman hired for the position, are not supported by substantial evidence.

Mr. Scully testified that the advertised position was a regional property manager, overseeing the management of several apartment/condominium complexes. (N.T. at 252; R.R. at 261a.) The buildings at issue included a 1000–unit, high-rise apartment building with commercial space, a 360–unit condominium complex, and a 25–story, high-rise. (N.T. at 255–256; R.R. at 264a–265a.) Mr. Scully stated that it was absolutely necessary that the person in this position have high-rise experience. (N.T. at 256; R.R. at 265a.) Mr. Taylor admitted on the record that he had no experience managing high-rise buildings. (N.T. at 65, 117; R.R. at 74a, 126a.) As found by the hearing examiner, Mr. Taylor's experience was limited to managing smaller-scale, garden-type apartments (three floors or less), and he had never managed a single building exceeding 200 units. (Findings of Fact 22–23; N.T. at 67–68; R.R. at 76a–77a.) In addition, Mr. Taylor had very little experience managing a building with commercial space. (Finding of Fact 21; N.T. at 66; R.R. at 75a.)

Mr. Scully testified in great detail as to the specialized requirements for managing a high-rise building, and how management of such a building differed from that of garden-type or mid-rise apartments. He explained that the management duties differed in the level of sophistication with regard to staffing, housekeeping, renovations, mechanical systems, marketing, unions, budgets, and the selection of contractors. (N.T. at 223–224; R.R. at 232a–233a.) The differences were not merely one of scale; Mr. Scully testified, for example, concerning the more sophisticated type of security required in a high-rise building, including camera and card access systems, as well as card access systems for garages and parking lots, enunciator systems for fire alarms, and elevators. (N.T. at 224; R.R. at 233a.) Moreover, Mr. Taylor himself

testified that there is definitely a difference between managing a building with 100 units and a building with 1,000 units. (N.T. at 118; R.R. at 127a.)

■ This testimony provides substantial evidence for the hearing examiner's finding that Mr. Taylor was not qualified for the position and his conclusion that Respondent met its burden of proving a legitimate, nondiscriminatory reason for not hiring Mr. Taylor.

■ Mr. Taylor also argues that the hearing examiner's findings on Ms. Carson's qualifications are not supported by substantial evidence. Specifically, he takes exception with the fact that Mr. Taylor possessed a Pennsylvania real estate license while Ms. Carson apparently did not. Mr. Scully testified that he believed Ms. Carson was licensed in Pennsylvania. (N.T. at 234; R.R. at 243a.) He also stated that if she did not have a Pennsylvania license, he knew she was licensed in New Jersey and that he believed there was reciprocity between the two states. (N.T. at 293–294; R.R. at 302a–303a.) From Mr. Scully's standpoint, at the time he was evaluating the applicants for the advertised position, Ms. Carson was either licensed in Pennsylvania or could easily be so due to her New Jersey license. In fact, he testified that even if she did not have a New Jersey license and there was no reciprocity, that this would not have prevented him from hiring Ms. Carson. Accordingly, whether or not Ms. Carson had a Pennsylvania real estate license, and there is no evidence in the record that she did *not,* this did not render her unqualified for the position.

■ The hearing examiner found that Ms. Carson was more qualified than Mr. Taylor for the position based upon her significant experience in handling a 1000 + – unit complex in Collingswood, New Jersey. (Finding of Fact 25.) Although Ms. Carson did not testify regarding this experience [4],

---

4. Respondent submitted a copy of Ms. Carson's resume to evidence her qualifications for the job. Although it was admitted without objection, it was hearsay. However, to the extent the information contained on the resume is corroborated by Mr. Scully's testimony, it may provide substantial evidence to support the hearing examiner's findings of fact. *See McCray v. Workmen's Compensation Appeal Board (Preschool Development Programs, Inc.),* 167 Pa.Cmwlth. 402, 648 A.2d 348 (1994), *petition for allowance of appeal denied,* 540 Pa. 608, 655 A.2d 995 (1995) (hear-

Mr. Scully testified that he had personal knowledge of Ms. Carson's work at the New Jersey complex. He knew that she had been employed at the complex while it was undergoing extensive renovations, and he personally verified her references. (N.T. at 231; R.R. at 240a.) This evidence supports the hearing examiner's finding that Ms. Carson was more qualified than Mr. Taylor for the position.

Finally, Mr. Taylor argues that the hearing examiner erred in finding that the advertised position was for a "regional property manager" (Finding of Fact 9), rather than a building or site manager. He claims that this finding is not supported by substantial evidence and asks that it be stricken.

 Mr. Scully testified that the position advertised was for a "regional manager." (N.T. at 251; R.R. at 260a.) This is evidenced by the ad itself, which seeks a manager "for several Apartment Condo Complexes." (Exhibit C–20.) As Mr. Scully testified, the advertised position could only have been for a *regional* manager because that is the only type of property manager that would have handled more than one building. (N.T. 252; R.R. at 261a.) Mr. Taylor claims that because Respondent's attorney referred to the position at issue as that of "building or site manager" in correspondence to the PHRC, that the hearing examiner's finding is not supported by substantial evidence. Obviously, the hearing examiner's finding resulted from a credibility determination in favor of Mr. Scully's hearing testimony, and we will not disturb this finding on appeal. Regardless, we are satisfied that Mr. Taylor, due to his lack of experience with high-rise buildings, would not have been qualified to fill either position.

In sum, we conclude that the hearing examiner did not err in applying the *McDonnell Douglas* analysis, because there is no direct evidence of discrimination in this case. If *Price Waterhouse* had been followed, the Respondent would still prevail because Mr. Taylor did not prove that his

say evidence admitted without objection may support a finding of fact if it is corroborated by

gender motivated the Respondent not to hire him and because Respondent proved that it would not have hired Mr. Taylor because he was not qualified, regardless of his gender. Finally, we conclude that the hearing examiner's findings of fact are supported by substantial evidence.

Accordingly, we affirm the PHRC's September 19, 1995 order dismissing Mr. Taylor's complaint.

### ORDER

AND NOW, this 31st of July, 1996, the September 19, 1995 order of the Pennsylvania Human Relations Commission at Docket No. E–45897 is hereby affirmed.

competent evidence in the record).