**The NEW COREY CREEK APARTMENTS, INC. and Charles Wood, Manager, Petitioners,**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.

Decided Dec. 8, 2004.

Reargument Denied Feb. 1, 2005.

Stephanie J. Mensing, Bala Cynwyd, for petitioners.

William R. Fewell, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The New Corey Creek Apartments, Inc. (Corey Creek) and its employee, apartment manager Charles Wood (Wood) (collectively Petitioners), petition for review of the January 27, 2004 order of the Pennsylvania Human Relations Commission (Commission) finding that Petitioners committed race discrimination in housing under Sections 5(h)(1) and 5(h)(3) of the Pennsylvania Human Relations Act (Act)[1] and awarding damages. We affirm.

Corey Creek consists of 54 apartments situated in two separate, three-story buildings located in Mansfield, Pennsylvania. Stephanie Gates (Gates), an African American female, entered into a one-year lease agreement to rent an apartment with Corey Creek for a term beginning on November 1, 1999 and ending on October 31, 2000.

By letter dated August 10, 2000, Corey Creek issued to Gates a 60-day notice of intent not to renew her lease, indicating that she should vacate her apartment no later than October 31, 2000. Gates vacated the apartment in mid-September 2000. On November 24, 2000, Gates filed a Complaint with the Commission against Petitioners, alleging race discrimination in housing under Sections 5(h)(1) and 5(h)(3) of the Act. Following an investigation, the Commission made a probable cause finding. A subsequent Commission conciliation meeting failed to resolve the matter and the Commission approved the case for a public hearing before a Hearing Examiner.

After the public hearing was held, the Hearing Examiner made the following findings of fact. In January 2000, during an argument with Gates regarding her visiting stepson, Wood stated directly to Gates "this is the reason why N------s shouldn't live in a complex like this" and "that's why monkeys deserve to be back in Africa." (F.F. 27, 31) After the incident, Gates attempted to call Ronald Laessig (Laessig), President of Corey Creek, to report Wood's racial insults, but he would not return her call. Gates also testified that on a subsequent encounter, Wood commented to her that "monkeys don't deserve to live in a complex like this, because we [sic] don't know how to live." (F.F. 65)

In addition, the Hearing Examiner credited testimony indicating that Wood called the police four separate times complaining that Gates, her family and her guests were either too loud or fighting. Gates was never charged, and two of the police reports reflected that Wood's complaints were unfounded.

On several occasions, when Gates was having get-togethers, Wood would tell her guests to go inside. Gates' nephew testified that on one occasion, when he was outside the apartment building, Wood approached him and stated "[you] N------s [need] to go somewhere with all that noise." (F.F. 42) Also, testimony indicated that Wood told Gates' visiting nieces and daughter, all of whom are African American, that they were not allowed to play outside the building on the sidewalk, the

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955(h)(1) (relating to discrimination in the leasing of housing) and § 955(h)(3) (relating to discrimination in the provision of the terms, conditions, or privileges associated with housing accommodations).

street, or the apartment complex green area. He then directed them to go indoors. The Hearing Examiner determined that Wood permitted white tenants and their visitors to play in those areas.

Gates experienced water leaks, heating problems, a defective oven pilot light and drafts in her apartment. In accordance with Corey Creek policy, Gates submitted work orders requesting repairs for the water leaks and heating problems. Testimony was presented indicating that Wood directed Corey Creek maintenance men not to make repairs to Gates' apartment but permitted them to make repairs for white tenants.

The Hearing Examiner also found that Gates was late paying her rent to Corey Creek for the months of April through August 2000. In addition, her July 2000 rent check was returned for insufficient funds. Gates ultimately did pay the rent for these months, including a late fee on each occasion.

Based on the above, the Hearing Examiner concluded that Gates presented *direct* evidence of discriminatory conduct because Wood directed grossly offensive racial slurs towards Gates, denied necessary repairs to Gates' apartment, made unfounded police reports about Gates, and denied Gates' family and guests the full privileges of tenancy at Corey Creek, all on account of her race. The Hearing Examiner also determined that Wood did not treat white tenants or their guests similarly.

In addition, the Hearing Examiner found that Corey Creek was liable for Wood's discriminatory conduct based on the law of agency and that Petitioners failed to meet their burden of showing that they would have legitimately taken the same actions absent Wood's impermissible discriminatory intent.

The Hearing Examiner's findings of fact, conclusions of law and recommendations were subsequently adopted by the Commission. The Commission issued an order requiring Corey Creek to cease and desist from engaging in discriminatory housing practices and requiring Petitioners, jointly and severally, to pay Gates' counsel fees, the costs associated with presentation of her case, the costs associated with her move from Corey Creek, and $25,000.00 in compensatory damages for humiliation and embarrassment. The order also required Corey Creek and Wood to pay the Commonwealth of Pennsylvania a civil penalty pursuant to Section 9(f)(2)(i) of the Act,[2] in the amounts of $5,000.00 and $2,500.00, respectively.

Petitioners timely filed the instant appeal, contending that (1) the Commission committed an error of law by failing to consider direct evidence presented for the purpose of rebutting Gates' claims of race discrimination and (2), the Commission abused its discretion by awarding compensatory damages to Gates for emotional distress absent sufficient evidence of an injury. Gates has filed an intervening brief requesting an award of counsel fees for her costs associated with defending this appeal.

Our review of an order of the Commission is limited to determining whether there was a violation of constitutional rights, whether there was an error of law or whether the necessary findings of fact are supported by substantial evidence. *Pennsylvania State Police v. Commonwealth, Pennsylvania Human Relations Commission,* 127 Pa.Cmwlth. 436, 561 A.2d 1320 (1989). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion reached. *Borough of Econ-*

2. 43 P.S. § 959(f)(2)(i).

*omy v. Pennsylvania Human Relations Commission,* 660 A.2d 143 (Pa.Cmwlth. 1995).

Where direct evidence of discrimination is presented, such evidence, if supported by a preponderance of the evidence, is sufficient to support a finding of discrimination. *Allison v. Pennsylvania Human Relations Commission,* 716 A.2d 689 (Pa.Cmwlth.1998).[3] In cases involving direct evidence of discrimination, after a complainant proves that her race played a motivating part in the housing decision, the burden shifts to the respondent to prove by a preponderance of the evidence that it would have made the same decision absent the discriminatory motive. *See Taylor v. Pennsylvania Human Relations Commission,* 681 A.2d 228 (Pa.Cmwlth. 1996) (utilizing an analysis derived from the United States Supreme Court decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) for claims under the Act involving direct evidence of gender discrimination in employment).

Petitioners do not challenge the Commission's conclusion that Gates presented sufficient direct evidence of racial discrimination in housing to establish a violation of Section 5(h)(3) of the Act, regarding discrimination in the provision of the terms, conditions or privileges of housing accommodations. Moreover, Petitioners do not challenge the Commission's finding that they failed to meet their burden of showing that they would have legitimately taken the same adverse housing actions absent Wood's discriminatory conduct.

Rather, Petitioners maintain that the Commission failed to consider rebuttal evidence indicating that Corey Creek would have chosen to terminate Gates' lease agreement regardless of whether Wood was motivated to act based on race, thereby implicating Section 5(h)(1) of the Act, regarding discriminatory refusal to rent or sell.[4] Petitioners assert that the Commission capriciously disregarded competent evidence which would support a finding that Petitioners' decision to terminate the lease was a valid business decision rather than an action based on discriminatory motives, citing in support thereof *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 812 A.2d 478 (2002) (review for capricious disregard of material, competent evidence is an appropriate component for consideration when it is properly raised on appeal).

We disagree. First, as noted above, the Commission did not disregard the evidence and testimony indicating that Gates was late paying her rent to Corey Creek for the months of April through August 2000 and that her July 2000 rent check was returned for insufficient funds. The Commission also acknowledged that Corey Creek's August 10, 2000 letter terminating the lease was partially responsible for Gates' decision to leave the apartment. However, contrary to Petitioners' assertions, the September 22, 2000 letter written by Gates to Laessig apologizing for

3. Because the Commission found direct evidence establishing discriminatory intent, the need to apply the pretext, or burden-shifting, analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), was eliminated.

4. Petitioners apparently reach this conclusion based on the following language set forth in the Commission opinion: "[Petitioners] attempted to attack the credibility of the direct evidence presented in this case rather than attempt to offer that any of Wood's actions would have been taken even absent his race-based motivation." (R.R. 168a)

late rent payments and requesting that Corey Creek keep Gates' deposit in lieu of the September rent is insufficient to warrant a conclusion that Corey Creek's decision to terminate the lease was not based on discriminatory motives.

The record reveals that the Commission considered the rebuttal evidence presented by Petitioners but simply determined that it was insufficient to refute the overwhelming evidence that Gates vacated her apartment at Corey Creek due to Wood's discriminatory conduct. Our review indicates that the Commission comprehensively analyzed the documentary evidence presented regarding Gates' late payment of rent, Corey Creek's intention to terminate Gates' lease and all of Laessig's testimony. (R.R. 167a–169a) The Commission is the sole judge of witness credibility, the weight to be afforded the evidence, and the inferences to be drawn therefrom. *Pittsburgh Bd. of Pub. Educ. v. Pennsylvania Human Relations Commission,* 128 Pa.Cmwlth. 324, 563 A.2d 581 (1989). We will not disturb the Commission's decision to fail to credit Laessig's testimony that he terminated Gates' lease due to her late rental payments regardless of Wood's conduct.

The record supports the Commission's conclusions that (1) the primary reason Gates left her Corey Creek apartment was Wood's race-based discriminatory conduct and (2), Petitioners failed to meet their burden of showing that the decision to terminate Gates' lease would have been made absent Wood's race-based discriminatory conduct.

We now turn to the issue of the Commission's compensatory damage award. In matters filed under Section 5(h) of the Act, the Commission is authorized to award damages for embarrassment and humiliation.[5] The goal of the Act is to make persons whole for injuries suffered as a result of discrimination. *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745 (1998). The Commission's authority to fashion remedies under the Act is entitled to great deference. *Allison; Taylor; Consolidated Rail Corp. v. Pennsylvania Human Relations Commission,* 136 Pa.Cmwlth. 147, 582 A.2d 702 (1990).

Petitioners argue that Gates failed to present sufficient evidence to support the Commission's $25,000.00 compensatory damage award and that the Commission therefore committed an abuse of discretion. In support of this argument, Petitioners note that Gates presented no testimony regarding the manner in which Wood's conduct affected her daily life, that it affected her career, or that she experienced any physical symptoms of distress, for example eating or sleeping problems, depression, fear or paranoia. Gates testified that she consulted a physician and received a prescription from him but she failed to identify the medical diagnosis or the nature of the prescription. She also admitted that she did not seek psychological counseling. Petitioners further note the testimony of Gates' daughter indicating that she never saw her mother cry and that she did not know why Gates moved from Corey Creek.

We are aware of no binding authority supporting Petitioners' contention that an award for humiliation and embarrassment authorized by Section 9(f)(1) of the Act must be supported by evidence indicating that the complainant suffered actual physical symptoms. Once a finding of discrimination is made, the decision as to the appropriate amount of an award is extremely fact-specific. As such, evidence regarding both the nature of the discrimi-

5. Section 9(f)(1) of the Act, 43 P.S. § 959(f)(1).

natory conduct and the victim's reaction thereto is key.

Here, the Commission credited Gates' testimony that she wanted to cry when confronted with Wood's racial slurs, that Wood took everything from her as a black individual and as a mother, that she was under stress, that she could not understand why Wood was treating her poorly and that she felt like Wood treated her as less than a human. Moreover, the Commission credited corroborating testimony from Gates' friend and from Gates' mother indicating that Gates contemporaneously communicated her humiliation regarding Wood's actions to them.

We will not disturb a remedial order of the Commission unless it constitutes a patent attempt to achieve ends that cannot fairly be said to effectuate the policies of the Act. *Consolidated Rail Corp.* Therefore, we find that the record supports the Commission's $25,000.00 award for humiliation and embarrassment based on the nature of the discriminatory conduct in addition to Claimant's testimony and that of her friends and family.

Finally, we reject Gates' contention that she is entitled to an assessment of counsel fees associated with the costs of defending this appeal. Reasonable counsel fees may be awarded for an appeal that is devoid of merit or lacking any basis in fact or law. Pa. R.A.P. 2744; *Zwibel v. Commonwealth, Dep't of Trans., Bureau of Driver Licensing,* 832 A.2d 599 (Pa. Cmwlth.2003); *Venafro v. Com., Dep't of Transp., Bureau of Driver Licensing,* 796 A.2d 384 (Pa.Cmwlth.2002) (finding appeal that merely raises a well-settled issue and presents no legal support to be frivolous). An appeal is not frivolous, however, simply because appellant's position is ultimately found to be incorrect. *City of Erie v. Int'l Assoc. of Firefighters, Local 293,* 104 Pa. Cmwlth. 394, 522 A.2d 132 (1987).

Contrary to Gates' position, Petitioners' appeal is not merely an attempt to challenge the Commission's findings of fact and credibility determinations in the hopes of getting a different result. Instead, Petitioners raise a valid, albeit unsuccessful, challenge to the Commissions' application of the burden of proof under Section 5(h)(1) of the Act.

Further, we do not find that Petitioners' challenge to the Commission's $25,000.00 compensatory damage award was unreasonable. Significantly, the Hearing Examiner acknowledged that Gates' testimony was sparse on this issue, opening the door for a "substantial evidence" challenge. Moreover, as noted above, there is a dearth of Pennsylvania case law on the matter of damages for humiliation and embarrassment under Section 9(f) of the Act.

Based on the above, we affirm the order of the Commission and deny Gates' request for counsel fees.

Judge PELLEGRINI concurs in the result only.

***ORDER***

AND NOW, this 8th day of December, 2004, the January 27, 2004 order of the Pennsylvania Human Relations Commission is hereby AFFIRMED. The request for an award of counsel fees submitted by Intervening Complainant Stephanie Gates is hereby DENIED.