IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1400 Main Holdings, LLC, | : | |
| AJH Management Company, | : | |
| and Shay Carelly, | : | |
|         Petitioners | : | |
| | : | |
|      v. | : | No. 155 C.D. 2024 |
| | : | |
| Pennsylvania Human Relations | : | Submitted:  October 8, 2024 |
| Commission, | : | |
|         Respondent | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: November 6, 2024

        1400 Main Holdings, LLC (Main Holdings), AJH Management Company (AJH), and Shay Carelly (Carelly) (collectively, Petitioners) petition for review of the January 22, 2024 Final Order of the Pennsylvania Humans Relations Commission (Commission).  The Commission's order (1) awarded $60,000.00 in compensatory damages for embarrassment and humiliation, and (2) imposed a civil penalty of $7,000.00, both commensurate with the Commission's finding that Petitioners failed to reasonably accommodate the disability of April Crenney (Crenney), a tenant in an apartment building owned by AJH and managed by Carelly, in violation of Section 5(a) of the Pennsylvania Human Relations Act (PHRA).[1]  In this Court, Petitioners argue that both the damages award and civil penalty are unsupported by the record, violative of the purposes of the PHRA, and excessive.

        Upon review, we vacate, in part, and remand to the Commission for further proceedings.

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 955(a).

# I.  FACTS AND PROCEDURAL HISTORY

We summarize the Commission's pertinent findings as follows. Beginning in July 2021, Crenney and her husband leased an apartment from Main Holdings in an apartment building owned by AJH and managed by Carelly (Property). (Commission Findings of Fact (FOF) 1-3.)  The terms of Crenney's lease required that she obtain permission prior to making any changes to the apartment and, upon termination, pay to have it restored to its original condition. *Id.*, 5-6.  On September 1, 2021, Crenney emailed Carelly, explaining that she had numerous disabilities[2] and was concerned that only one handicap-accessible parking space was located near her apartment.  Crenney requested that another space be converted to being handicap-accessible or that she be assigned a specific space. *Id.*, 7-8.  Carelly responded that a space could not be assigned, but she nevertheless would look into having another space designated as handicap-accessible. *Id.*, 10.

On September 21, 2021, Crenney emailed Carelly and requested permission to install safety grab bars in the shower in her apartment.  Carelly responded that permanent grab bars were not permitted, but Crenney could purchase and install suction-cup bars. *Id.*, 11-12.  On October 15, 2021, an attorney emailed Carelly on Crenney's behalf and advised that metal grab bars were necessary to meet Crenney's needs and that plastic grab bars were insufficient. *Id.*, 13.  Carelly responded the same day that Petitioners' position was not going to change. *Id.*, 14.

On October 28, 2021, Crenney filed a complaint with the Commission, alleging that Petitioners' failure to accommodate her disabilities by providing another parking space and permitting the installation of metal grab bars in the shower violated

---

[2] Specifically, Crenney advised in the email that she suffers from a weakened immune system, common variable immunodeficiency, and polyarthritis. (Reproduced Record (R.R.) at 240a.)  She further stated that she "is not a very good walker" and was "trying to avoid constantly needing a motorized wheelchair and persevere as long as possible with [her] walker." *Id.*

Section 5(h) of the PHRA, 43 P.S. § 955(h). A Permanent Hearing Examiner (Hearing Examiner) held a public hearing on October 13, 2023, and thereafter issued findings of fact, conclusions of law, and a recommended disposition. Therein, the Hearing Examiner recommended that Crenney's parking claim under Section 5(h)(3.2) of the PHRA, 43 P.S. § 955(h)(3.2),[3] be dismissed, concluding that Crenney "failed to show that the requested accommodation . . . was necessary to afford her an equal opportunity to use and enjoy the dwelling." (Conclusion of Law (COL) 10.) With regard to Crenney's claim under Section 5(h)(3.1)[4] of the PHRA related to the requested grab bars, the Hearing Examiner concluded that Crenney established a *prima facie* case of unlawful discrimination. The Hearing Examiner further concluded that Petitioners did not establish that the requested modification to the shower was unreasonable. (COL 14-17.)

The Hearing Examiner recommended an award of $60,000.00 in compensatory damages for humiliation and embarrassment and the imposition of a civil penalty in the amount of $7,000.00. On January 22, 2024, the Commission approved the Hearing Examiner's findings of fact, conclusions of law, and opinion and ordered that Petitioners (1) cease from any discriminatory conduct; (2) attend fair housing

---

[3] Section 5(h)(3.2) of the PHRA prohibits any person from refusing "to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a housing accommodation." 43 P.S. § 955(h)(3.2).

[4] Section 5(h)(3.1) of the PHRA, in pertinent part, prohibits any person from refusing to "permit, at the expense of a person with a handicap, reasonable modifications of existing premises occupied . . . by such person if such modifications may be necessary to afford such person full enjoyment of the premises[.]" 43 P.S. § 955(h)(3.1). Section 5(h)(3.1) goes on to qualify, however, that, in the case of a rental, "a landlord may, where it is reasonable to do so, grant permission for a modification if the renter agrees to restore the interior of the premises to the condition that existed before the modification, with reasonable wear and tear excepted." *Id.*

training; (3) pay Crenney $60,000.00 in damages; and (4) pay to the Commonwealth a civil penalty in the amount of $7,000.00.

Petitioners now seek review in this Court.

## II.   QUESTIONS PRESENTED

Petitioners do not challenge the Commission's finding of unlawful discrimination, but, rather, challenge the amounts of the Commission's compensatory damages award and civil penalty, arguing that both (1) are unsupported by substantial evidence in the record, (2) fail to further the purposes of the PHRA, and (3) are excessive.

## III.   DISCUSSION[5]

### A.    Relevant Law

Section 12(a) of PHRA requires that it "be construed liberally for the accomplishment of the purposes thereof, and any law inconsistent with any provisions hereof shall not apply." 43 P.S. § 962(a); *see also Chestnut Hill College v. Pennsylvania Human Relations Commission*, 158 A.3d 251, 258 (Pa. Cmwlth. 2017) (PHRA should be construed liberally to accomplish its purposes). However, the liberal construction mandate of PHRA only requires that we "adopt a construction which, without doing violence to the language of the statute, best promotes the goal of equal [opportunities]." *Winn v. Trans World Airlines, Inc.*, 484 A.2d 392, 398 (Pa. 1984). Further, and generally,

> when considering an agency's interpretation of a statute that it is charged with implementing and enforcing, we afford substantial deference to that interpretation.

---

[5] Our review of a Commission determination is limited to deciding whether it is in accordance with the law, whether constitutional rights have been violated, and whether the Commission's findings are supported by substantial evidence in the record. *Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189, 1187 n.3 (Pa. Cmwlth. 2011).

4

However, when an administrative agency's interpretation is inconsistent with the statute itself, or when the statute's meaning is unambiguous, such an administrative interpretation carries little weight. Consequently, we must give deference to the interpretation of the legislative intent of a statute made by an administrative agency only where the language of that statute is not explicit or ambiguous. A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations.

*Harrisburg Area Community College v. Pennsylvania Human Relations Commission*, 245 A.3d 283, 296 (Pa. Cmwlth. 2020) (internal citations, quotations, and editing omitted).

With regard to remedies that the Commission may afford for unlawful discrimination, Section 9(f)(1) of the PHRA provides, in relevant part, as follows:

(f)(1) If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to, . . . the making of reasonable accommodations, or selling or leasing specified housing accommodations or commercial property upon such equal terms and conditions and with such equal facilities, services and privileges or lending money, whether or not secured by mortgage or otherwise for the acquisition, construction, rehabilitation, repair or maintenance of housing accommodations or commercial property, . . . [and,] in those cases alleging a violation of [S]ection[s] 5(d), (e) or (h) or 5.3[6] where the underlying complaint is a violation of [S]ection[s] 5(h) or 5.3, the Commission may award actual damages, including damages caused by humiliation and embarrassment, as, in the judgment of the Commission, will

---

[6] Added by the Act of December 16, 1986, P.L. 1626.

5

effectuate the purposes of this act, and including a requirement for report of the manner of compliance.

43 P.S. § 959(f)(1). Damage awards under the PHRA serve a dual purpose: to discourage discrimination and to restore the injured party to his or her pre-injury status. *McGlawn v. Pennsylvania Human Relations Commission*, 891 A.2d 757, 774-75 (Pa. Cmwlth. 2005). "The goal of the PHRA is to make persons whole for injuries suffered as a result of discrimination, and the Commission's authority to fashion remedies is entitled to great deference." *Canal Side Care Manor, LLC v. Pennsylvania Human Relations Commission*, 30 A.3d 568, 574-74 (Pa. Cmwlth. 2011) (citation omitted). In addition,

> once a finding of discrimination is made, the decision as to the appropriate amount of an award is extremely fact-specific. Thus, evidence regarding both the nature of the discriminatory conduct and the victim's reaction thereto is key. Further, we [have] explained that this Court will not disturb a remedial order of the Commission unless it constitutes a patent attempt to achieve ends that cannot fairly be said to effectuate the policies of the PHRA.

*Id.* at 575 (internal citations, quotations, and bracketing removed).

### B.     Damages for Humiliation and Embarrassment

Petitioners first contend that the Commission's compensatory damages award is unsupported by record evidence, does not serve the purposes of the PHRA, and is erroneously based on arbitrary and misapplied criteria borrowed from a 1999 Brooklyn Law Review article. Petitioners request that the award be either vacated in its entirety or significantly reduced.

The PHRC may award damages for embarrassment and humiliation. 43 P.S. § 959(f)(1); *McGlawn*, 891 A.2d at 777; *New Corey Creek Apartments, Inc. v. Pennsylvania Human Relations Commission*, 865 A.2d 277, 282 (Pa. Cmwlth. 2004).

6

"In determining whether the evidence of emotional distress is sufficient to support an award, we look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused the distress." *McGlawn*, 891 A.2d at 777 (citation omitted). A complainant's own testimony of embarrassment and humiliation can suffice to support an award for compensatory damages. *Girard Finance Co. v. Pennsylvania Human Relations Commission*, 52 A.3d 523, 536 (Pa. Cmwlth. 2012).

Neither this Court nor our Supreme Court has adopted a strict formula to be used in the calculation of humiliation and embarrassment damages because, simply, Section 9(f)(1) of the PHRA does not contain one. Rather, as stated above, our cases require the Commission to make a fact-specific assessment of the nature of the discriminatory conduct and the victim's actual mental and physical reactions to that conduct in fashioning an award that effectuates the purposes of the PHRA. 43 P.S. § 959(f)(1); *New Corey Creek Apartments*, 865 A.2d at 282-83. For example, in *New Corey Creek Apartments*, a leasing company and its property manager were found to have engaged in race discrimination in housing in violation of Section 5(h) of the PHRA. The property manager in *New Corey Creek Apartments* repeatedly hurled grossly offensive racial slurs at the complainant, who was African American, harassed and made unfounded police reports about her family, refused to perform maintenance work on the complainant's apartment, and declined to renew her lease. 865 A.2d at 279-80. The Commission found in favor of the complainant and awarded, among other relief, $25,000.00 in compensatory damages for humiliation and embarrassment. *Id.* at 280. We upheld the award, finding that the Commission conducted an adequate, fact-specific analysis that was supported by sufficient evidence in the record and did not constitute a "patent attempt" by the Commission to achieve ends that did not effectuate the purposes of the PHRA. *Id.* at 283.

Similarly, in *McGlawn*, the Commission concluded that the respondent, a state-licensed mortgage broker, engaged in discriminatory "reverse redlining" practices that had a disparate impact on African Americans and African American neighborhoods. 891 A.2d at 773. The Commission awarded compensatory damages, which included an award of $25,000.00 in emotional distress damages for humiliation and embarrassment. We reiterated that, in determining whether an award of damages for humiliation and embarrassment is supported by the record, "we look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused the distress." *Id.* at 777. We reviewed the direct evidence of emotional distress and its physical manifestations and noted that the Commission adequately reviewed such evidence in fashioning its award. We accordingly upheld the emotional distress portion of the Commission's award, concluding that it was issued within the Commission's statutory authority. *Id.*[7]

More recently, in *Canal Side Manor, LLC*, we considered the propriety of the Commission's award of humiliation and embarrassment damages to a complainant who was removed from a personal care home because she had human immunodeficiency virus (HIV). In determining whether the Commission's award was supported by the record, we once again emphasized that the Commission was required to make a fact-specific inquiry as to both the nature of the discriminatory conduct and the victim's reaction to it and render a damages award that effectuated the purposes of the PHRA. 30 A.3d at 575. We reviewed at length the Commission's detailed factual analysis of the complainant's direct testimony and concluded that the Commission's findings were supported by substantial and competent live testimony of the

---

[7] We also vacated a portion of the Commission's damages award not pertinent to our analysis here. *Id.* at 779.

complainant and other witnesses, whom the Commission found to be credible. *Id.* at 576.

Here, in fashioning its damages award, the Commission considered five factors that it commonly uses to assess emotional distress damages: (1) whether the complainant suffered physical harm in addition to mental harm; (2) the nature of the evidence describing the harm; (3) whether treatment for the injury was necessary; (4) whether the discrimination was a single act or ongoing conduct; and (5) whether the complainant was particularly susceptible to injury due to his or her personal history. (R.R. at 582a.)[8]  The Commission reasoned as follows:

> The Commission finds that factors 1, 2, and 4 weigh in favor of awarding Crenney a significant amount for emotional distress damages.  Regarding physical harm, Crenney testified that she has gotten some yeast infections under skin flaps and on her breasts and these can be painful.  For the second factor[,] both Crenney and her husband testified how the inability of Crenney to shower regularly has negatively impacted their relationship.  Crenney testified that her husband has told her it is difficult to be attracted to her.  She further testified that[,] because of the inability to more frequently shower[,] [] her husband does not want to cuddle with her, let alone have sex with her.  Crenney's husband testified there is not much intimacy between them[,] which is a change from prior to the denial.  Crenney's husband also testified about changes in [Crenney's] behavior after the modification request was denied.  He testified that Crenney began sleeping almost 20 hours per day and that she had never exhibited that behavior in the time he had known her.  Finally, it[ is] undisputed that [Crenney] still did not have a permanent grab bar at the time of the hearing almost two years after filing the [c]omplaint.  Crenney's husband testified that she still will not shower unless he is home.  For

---

[8] The factors appear to be borrowed from two 1993 fair housing adjudications issued by administrative law judges within the United States Department of Housing and Urban Development (HUD).  (R.R. at 607a-08a.)

9

these reasons, the Commission finds that $60,000.00 is an appropriate amount in emotional distress damages.

*Id.* at 583a.

Petitioners first contend that the Commission incorrectly relied upon and applied criteria first set forth in *Evaluating Emotional Distress Damage Awards to Promote Settlement of Employment Discrimination Claims in the Second Circuit*, 65 Brooklyn L. Rev. 393, 428-52 (1999).[9] Petitioners assert that the criteria are arbitrary and, in any event, were misapplied by the Commission in this case. Petitioners further argue that the damages award does not effectuate the purposes of the PHRA and should be further reduced because Crenney did not attempt to use the suction cup grab bars that Petitioners recommended.

First, nowhere in the Commission's decision does it indicate that the Commission strictly relied on any tier system from the Brooklyn Law Review article or elsewhere. It is true that the Commission considered five criteria utilized in analogous federal fair housing cases within HUD, but the Commission does not reference the law review article or make any findings as to whether Crenney's claim fits within any "tier" of damages. We therefore render no opinion as to the validity or

---

[9] The Commission cited, without expressly adopting, these factors in its decision in *Cole v. Todd Toms* (PHRC, No. 202102052, filed September 18, 2023). (R.R. at 606a.) The Brooklyn Law Review article discusses a framework pursuant to which damage claims are divided into "tiers" by their severity, with each tier having its own range of recommended damages. Tier I, characterized as "garden variety" emotional distress, has a range of damages from $5,000.00 to $35,000.00. Tier II, which includes significant emotional distress supported by medical and/or witness testimony, has a range of damages from $50,000.00 to $100,000.00. Tier III refers to the most egregious and outrageous cases of discrimination with significant impacts on life supported by medical testimony. Tier III emotional distress damages may exceed $100,000.00. (R.R. at 606a.)

10

applicability of the article because there simply is no evidence that it was applied in this case.[10]

Second, although the criteria actually considered by the Commission are not derived from our case law or the PHRA, they are legitimate to the extent that they express in concrete terms the two factors we expressly have required the Commission to consider, namely, (1) the nature and extent of the discriminatory conduct, and (2) the direct evidence of its impact on the complainant. Thus, although we expressly do not hold that the five criteria utilized by the Commission in this case are mandated by either the PHRA or Pennsylvania courts, they fairly facilitated the Commission's analysis in this case and encompass both the nature and extent of the discriminatory conduct and Crenney's reaction to it. We therefore will not disturb the Commission's award based on its use of these criteria.

Nevertheless, we agree with Petitioners that the Commission's findings, particularly with regard to the nature of the discriminatory conduct, are in part unsupported by the record. The Commission concluded under factor four that Petitioners engaged in ongoing discriminatory conduct because they had not permitted the installation of permanent grab bars in Crenney's shower as of the date of the hearing before the Commission. This was error.

---

[10] We note, however, that the PHRA and our caselaw is clear regarding the analysis the Commission must undertake in fashioning humiliation and embarrassment damage awards, and the PHRA itself does not expressly authorize the Commission to adopt or utilize any specific set of criteria or formula to mechanistically determine damage awards, particularly not ones conceived in an academic law review article published 25 years ago.

Crenney first requested the installation of permanent grab bars by email on Friday, September 17, 2021.[11] (R.R. at 242a.) Carelly responded by email on Tuesday, September 21, 2021, advising that permanent bars were not permitted, but removable bars could be installed. *Id.* Two days later, on September 23, 2021, counsel for Crenney sent a letter to Carelly requesting that Crenney be permitted to install grab bars and threatening litigation if no response was received by October 1, 2021. *Id.* at 244a-45a, 250a. Carelly responded by letter on September 27, 2021, again offering to permit installation of suction cup grab bars. *Id.* at 247a, 250a. After further exchanges of communication between Carelly and counsel on October 15, 2021, Crenney filed her complaint with the Commission on October 28, 2021. *Id.* at 249a, 252a. Protracted litigation of Crenney's claims continued until the Commission issued its Final Order on January 22, 2024. The fact that Crenney's claims were being litigated and that Petitioners defended against them (successfully with regard to the requested parking space) does not make Petitioners' violation ongoing for almost two years. The Commission's finding in this regard, particularly in light of its acknowledgment that Petitioners responded promptly to Crenney's accommodation request, participated fully in the proceedings before the Commission, and have no history of PHRA violations, is unsupported by evidence in the record and erroneous as a matter of law. We accordingly vacate the award and remand for reconsideration by the Commission.[12]

---

[11] The Commission's findings of fact 11 and 12 are incorrect. Crenney first emailed Carelly to request the installation of grab bars on September 17, 2021, not September 21, 2021. (R.R. at 242a.) Carelly responded on September 21, 2021. *Id.*

[12] Because we vacate the damages award on this ground, we do not consider Petitioners' other arguments.

## C.    Civil Penalty

Petitioners secondly argue that the Commission's imposition of a civil penalty in the amount of $7,000.00 is unsupported by the record because (1) the discriminatory conduct was not ongoing, and (2) the Commission had no evidence before it to assess Petitioners' financial means.  We agree and vacate the Commission's civil penalty.

Section 9(f)(2)(i) of the PHRA authorizes the Commission to impose a civil penalty in housing discrimination cases:

> (2)  [The Commission's] order may also assess a civil penalty against the respondent in a complaint of discrimination filed under [S]ection[s] 5(h) or 5.3[13] of this act:

> (i)   in an amount not exceeding ten thousand dollars ($10,000) if the respondent has not been adjudged to have committed any prior discriminatory practice[.]

43 P.S. § 959(f)(2)(i).

In determining the propriety and amount of a civil penalty under Section 9(f)(2)(i), the Commission considered the following factors: (1) the nature and circumstances of the violation; (2) the degree of culpability; (3) any history of prior violations; (4) the financial circumstances of the respondent; (5) the goal of deterrence; and (6) any other matters as justice may require.  *Id.* at 584a.[14]  The Commission relied on two facts to impose a civil penalty in the amount of $7,000.00: (1) permanent grab bars had not been installed in Crenney's shower two years after her initial request for

---

[13] Section 5.3 of the PHRA, 43 P.S. § 955.3, prohibits certain unlawful discriminatory practices in real estate sales and advertising.

[14] The Commission again borrowed these factors from a 1993 decision rendered by an administrative law judge within HUD.

13

them; and (2) Carelly's testimony that Petitioners' apartments are "somewhat high end":

> Here, the evidence establishes that [Petitioners] acted in a discriminatory manner when they refused to allow Crenney to install permanent grab bars in her shower and that almost two years later Crenney still did not have permanent grab bars. While the exact financial circumstances of [Petitioners] are unknown, Carelly testified that the apartments are "somewhat high end." The record also establishes that there are 376 units at [the Property].

*Id.*

We again render no opinion with regard to whether the five factors utilized by the Commission to impose a civil penalty should or must be applied in discrimination cases. The purpose of the civil penalty is to deter future discrimination, and, at least in this case, these factors fairly assessed the need to deter Petitioners from future discriminatory conduct. However, we agree with Petitioners that the Commission's findings in this regard are unsupported in the record.

First, as we already have discussed, the Commission's finding that Petitioners' discriminatory conduct was "ongoing" was erroneous and unsupported by the record. Second, the Commission's determination that Petitioners could readily afford to pay a $7,000.00 penalty also is unsupported in the record. The Commission relied exclusively on the "somewhat high end" status of the 376 apartments on the Property to arrive at an amount for the penalty and had before it no financial evidence supporting that determination. Although the Commission has considerable latitude in fashioning a penalty, it nevertheless must be supported by substantial evidence in the record. That is not the case here.

14

Because both of the findings on which the Commission relied to support its civil penalty are unsupported by substantial evidence in the record, we vacate the penalty and remand for reconsideration by the Commission.

## IV.    CONCLUSION

Because the Commission's findings as to its damage award for humiliation and embarrassment are, in part, unsupported by substantial evidence in the record, we vacate the award and remand for the Commission to issue, if warranted, a new damage award in light of Petitioners' single act of discriminatory conduct. Further, because the Commission's findings as to its imposition of a civil penalty also are unsupported by substantial evidence in the record, we vacate the penalty and remand for the Commission to issue, if appropriate, a new civil penalty. On remand, the Commission may make additional findings as necessary based on the record as it currently exists.

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1400 Main Holdings, LLC, | : | |
| AJH Management Company, | : | |
| and Shay Carelly, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 155 C.D. 2024 |
| | : | |
| Pennsylvania Human Relations | : | |
| Commission, | : | |
| Respondent | : | |

## ***ORDER***

AND NOW, this 6th day of November, 2024, the January 22, 2024 order of the Pennsylvania Human Relations Commission is hereby VACATED, in part, with regard to its award of compensatory damages and imposition of a civil penalty, as set forth in the foregoing Opinion. The order otherwise is AFFIRMED. This matter is REMANDED to the Commission for further proceedings consistent with the directives in the foregoing Opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge